Mark F. James (5295)
Mitchell A. Stephens (11775)
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone:  (801) 363-6363
Email: mjames@hjdlaw.com
          mstephens@hjdlaw.com

Richard D. Heideman (*pro hac vice*)
Noel J. Nudelman (admitted *pro hac vice*)
Tracy Reichman Kalik (*pro hac vice*)
HEIDEMAN NUDELMAN & KALIK, P.C.
1146 19th Street, NW  5th Floor
Washington, DC  20036
Tel: (202)463-1818
Fax: (202)463-2999

*Attorneys for Plaintiffs*

Francis M. Wikstrom (3462)
Zack L. Winzeler (12280)
PARSONS BEHLE & LATIMER
201 S. Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 532-1234
Email: fwikstrom@parsonsbehle.com
          zwinzeler@parsonsbehle.com

R. Bruce Duffield (*pro hac vice*)
Jena Valdetero (*pro hac vice*)
BRYAN CAVE LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
Tel: 312-602-5000
Fax: 312-602-5050

Kenneth J. Mallin (*Pro Hac Vice*)
BRYAN CAVE LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
Tel: (314) 259-2000
Fax: (314) 259-2020

*Attorneys for Garmin International, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ANDREA KATZ, on behalf of herself and all persons similarly situated,<br><br>          and<br><br>JOEL KATZ, on behalf of himself and all persons similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>GARMIN, LTD, and GARMIN INTERNATIONAL, INC.,<br><br>                    Defendants. | **MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br><br>Civil No. 2:14-cv-165-RJS<br><br>Judge: Hon. Robert J. Shelby |

## <u>TABLE OF CONTENTS</u>

I.     Motion for Final Approval of Class Settlement................................................ 1

II.    Introduction and Factual Background............................................................... 1

III.   Terms and Administration of the Settlement. .................................................. 4

    1.   Class Notice. .................................................................................................. 4

        i.    Individual Notice by E-mail or First Class Mail.......................................... 5

        ii.   Publication Notice. ...................................................................................... 6

        iii.  Toll Free Telephone Information.................................................................. 6

        iv.   Settlement Website. ..................................................................................... 6

    2.   Settlement Costs............................................................................................. 6

    3.   Attorneys' Fees. ............................................................................................. 7

    4.   Monetary and Non-Monetary Relief for Class Members. .............................. 8

    5.   The Release is Narrowly Defined. ............................................................... 10

IV.    Standards for Approval of Class Action Settlements. .................................... 10

    1.   The Proposed Settlement was Fairly and Honestly Negotiated..................... 11

    2.   Serious Questions of Law and Fact Exist. ................................................... 13

    3.   The Value of Immediate Recovery Outweighs the Mere Possibility of Relief after Protracted and Expensive Litigation.................................................................. 14

    4.   The Parties Believe the Settlement to be Fair and Reasonable...................... 15

V.     The Single Objection to Date Provides No Grounds to Reject the Settlement................ 15

    1.   The McFadzen Objection............................................................................. 16

VI.    Defendant has Complied with the Requirements of CAFA, 28 USC ¶ 1715. .................. 16

Conclusion ............................................................................................................ 18

APPENDIX OF SUCCESSFUL OPT-OUTS ......................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashley v. Regional Trans. Dist. & Amalgamated Transit Union Div.*
   *1001 Pension Fund Trust,*
   Case No. 05-cv-1567, 2008 WL 384579 (D. Colo. Feb. 11, 2008) ................................... 12, 15

*Belote v. Rivet Software, Inc.,*
   Case No. 12-cv-2792, 2014 WL 3906205 (D. Colo. August 11, 2014) ........................... 11, 14

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ................................................................................................................. 7

*Gottlieb v. Wiles,*
   11 F.3d 1004 (10th Cir. 1993) ......................................................................................... 10, 14

*Hill v. Kaiser-Francis Oil Co.,*
   Case No. civ-0-07, 2011 WL 13113454 (W.D. Okla. Dec. 12, 2011) ...................................... 7

*In re Lorazepam & Clorazepate Antitrust Litig.,*
   205 F.R.D. 369 (D.D.C. 2002) ............................................................................................... 15

*In re Rio Hair Naturalizer Products Liability Litig.,*
   No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ............................................. 12

*Jones v. Nuclear Pharmacy, Inc.,*
   741 F.2d 322 (10th Cir. 1984) ............................................................................................... 10

*Lane v. Page,*
   862 F. Supp. 2d 1182 (D. New Mexico 2012) ................................................................. 11, 14

*Marcus v. State of Kansas, Dept. of Revenue,*
   209 F. Supp. 2d 1179 (D. Kan. 2002) ................................................................................... 15

*Rosenbaum v. MacAllister,*
   64 F.3d 1439 (10th Cir. 1995) ................................................................................................. 7

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
   314 F.3d 1180 (10th Cir. 2002) ............................................................................................. 11

*Tennille v. Western Union Co.,*
   785 F.3d 422 (10th Cir. 2015) ................................................................................................. 4

*Weiss v. Mercedes- Benz of N. Am., Inc.,*
   899 F.Supp. 1297 (D. N.J. 1995) .................................................................................... 12, 13

*West Virginia v. Chas. Pfizer & Co., Inc.,*
   314 F. Supp. 710 (S.D.N.Y. 1970) *aff'd* 440 F.2d 1079 (2d Cir. 1971) ................................ 13

*Wilerson v. Martin Marietta Corp.,*
   171 F.R.D. 273 (D. Colo. 1997) ............................................................................................ 11

**Statutes**

28 USC § 1715 ............................................................................................................... 16, 17, 18

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... 4, 5, 10, 15

I.      **Motion for Final Approval of Class Settlement.**[1]

Plaintiffs, Andrea Katz and Joel Katz, on behalf of themselves and a class of all other persons similarly situated (collectively, "Plaintiffs"), and Defendant, Garmin International, Inc. ("Garmin" or "Defendant"),[2] hereby move, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order granting final approval of the proposed Settlement in this Action and Dismissing the Action with Prejudice.

II.     **Introduction and Factual Background.**

In the spring of 2011, Defendant began marketing and selling the Forerunner 610 sports watch (the "Watch") directly and through resellers in the United States. The Watch features, among other things, GPS functionality, a computer interface, and a contemporary design. On December 18, 2013, Plaintiff Andrea Katz filed a class action complaint against Defendant alleging the Watch design was defective in that the Watch's watchband (the "Watchband") could and did become detached from the Watch. Plaintiff demanded both monetary damages and an injunction prohibiting further sale of the Watch.

The proposed settlement is a significant achievement, ending over two years of expensive and time-consuming litigation. The settlement provides Class Members both monetary and non-monetary benefits carefully tailored to remedy any damages they may have suffered as a result of the allegedly defective Watchband. Class Members who have submitted a valid claim may receive free repair or replacement of their Watchband or Watch. Those who already paid to have

---

[1]      All statements and representations herein are made solely for the purpose of seeking class approval of settlement and are conditioned upon the court approving the settlement. All representations are made pursuant to Federal Rule of Evidence 408, and no such representations shall be admissible for any purpose, including but not limited to, establishing liability, should the Court not finally and fully approve the settlement.

[2]      Although Garmin Ltd. is a named Defendant, it was never served in this Action, and is not a party to the proposed Settlement Agreement. However, as part of the proposed Settlement Agreement, Garmin Ltd. is released by Plaintiffs.

their Watchband or Watch repaired will recover between $50 and $75. Notably, for <u>all</u> Class Members – regardless of whether they submit a claim – Defendant has agreed to extend the limited warranty as set forth in the warranty document provided to customers at the time of purchase of the Watch (the "One-Year Consumer Limited Warranty") for a period of 12 months from the date of final approval. The formal claims process is thus only one component of the settlement benefits afforded to Class Members.

The Settlement has received overwhelming support from the Class Members. As of the filing of this motion, only one Class Member, Michael McFadzen, has objected to the Settlement (the "McFadzen Objection"). (ECF 62.) The McFadzen Objection provides no reason to reject the Settlement because it is based on his individual circumstances and fails to explain why he simply cannot opt out of the Settlement in order to protect the interests of individuals like him with unique grievances. In addition, as of the filing of this motion, only one Class Member has excluded himself from the Settlement. (ECF 61); *see also* Appendix of Successful Opt-Outs.

The Settlement in this action was reached after extensive litigation in two separate district court venues. Plaintiffs originally filed a complaint in the Northern District of Illinois in December 2013, alleging the Watch suffered from a design defect that resulted in the Watchband detaching from the Watch. Defendant vigorously disputed liability and brought a motion to dismiss for lack of Article III standing, which was mooted after Plaintiffs voluntarily dismissed the action.

Plaintiffs then brought suit in the District of Utah, asserting again that the Watch suffered from a design defect that resulted in the Watchband detaching from the Watch. Plaintiffs asserted claims for (1) breach of contract, (2) breach of express warranty, (3) breach of implied warranty, (4) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, (5)

violations of the Utah Consumer Sales Practice Act, (6) violations of the Lanham Act, (7) violations of the Utah Truth in Advertising Act, as well as alternate claims for (8) negligence, (9) negligent misrepresentation, and (10) unjust enrichment. (ECF 1.) The parties subsequently engaged in the full briefing of Defendant's motion to change venue, which this Court denied (ECF 29), and Defendant's motion to dismiss certain claims for failure to state a claim, which this Court granted in part and denied in part (ECF 40).

The five claims that survived after the Court's Order of April 2015 on the motion to dismiss are for breach of contract, breach of warranty as to Andrea Katz, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, violations of the Utah Consumer Sales Practice Act, and unjust enrichment. (ECF 40.) Defendant continued to vigorously dispute any liability in its April 2015 Answer to the Complaint, and raised over 15 affirmative defenses. (ECF 41.) The parties subsequently engaged in extensive written fact discovery, including Defendant's production and Plaintiff's review of more than 15,000 pages of documents. Finally, after several months of arms-length negotiations, the parties came to an agreement on a proposed classwide settlement.

On May 13, 2016, the parties moved for preliminary approval of the Settlement. (ECF 54.) The parties filed with their motion: the Settlement Agreement, the proposed form of mailed/e-mailed Class Notice, the proposed form of publication notice, an affidavit of Plaintiffs' counsel in support of the motion, and the proposed order for preliminary approval. *Id.* This Court granted the motion for preliminary approval on May 31, 2016. (ECF 55) (as modified by the June 17, 2016 Order granting approval of amended publication notice (ECF 58), and the July 7, 2016 Order granting approval of amended class notice (ECF 60)). The Final Approval and Fairness Hearing is currently scheduled for November 3, 2016. *Id.* On September 28, 2016,

3

Plaintiffs separately filed their motion for approval of $385,000 in attorneys' fees and costs, and incentive fee awards of $1,250 to each of the named Plaintiffs. (ECF 63.) Defendant believes Plaintiffs' fee requests to be fair and reasonable under the circumstances.

Given the overall benefits to the Class (even for those who did not file Claim forms), the fact that Plaintiffs' attorneys' fees will in no way decrease the monetary benefits to Class Members, and the dearth of objections to the Settlement, this Court should overrule the McFadzen Objection, find the Settlement fair and adequate, and enter the final order and judgment.

## III.   Terms and Administration of the Settlement.

Defendant denies any and all liability to the named Plaintiffs or the Class Members. Rather, Defendant entered into the settlement solely to eliminate the burden and expense of further litigation. In exchange, Defendant has agreed to provide Class Members with substantial remedial and monetary benefits. The Court has conditionally certified the Settlement Class as "all persons who purchased and/or owned the Garmin Forerunner 610 watch (the 'Watch') between April 2011 and July 2014 in the United States." (ECF 55 at 1.)

### 1.   Class Notice.

For Classes under Rule 23(b)(3), such as here, the Court must direct to class members the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c). Rule 23's notice requirements are "designed to satisfy due process by providing unnamed class members the right to notice of certification and settlement, and a right to be heard." *Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (internal citation omitted). Notice must thus be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *Id.* (internal citation omitted).

The form of Class Notice, which this Court approved in its Order granting preliminary approval, was designed to provide the "best practicable notice under the circumstances." Fed. R. Civ. P. 23(c). (ECF 55, 58, 60.) Both the individual notice and publication notice directed Class Members to a website maintained by the Settlement Administrator, which contained detailed information about the litigation, the full settlement agreement, links to key pleadings, and clear instructions regarding deadlines and procedures for submitting claims, objecting to the Settlement, or opting out. *See* Declaration of James Prutsman at ¶¶ 18-21, attached hereto as **Exhibit A**.

### i.     Individual Notice by E-mail or First Class Mail.

Pursuant to the Settlement Agreement and the Court's Order of May 31, 2016 (as modified by its Order of July 7, 2016), the Settlement Administrator sent individual Class Notice via e-mail or First Class mail to the approximately 27,000 Class Members for which Defendant had e-mail addresses or physical addresses, as determined from Defendant's database of customers who provided either e-mail addresses or mailing addresses when purchasing the Watch from Garmin's online store, registering the warranty, or registering with Garmin Connect. (Settlement at §§ 2.03, 2.04; ECF 55, at 6; ECF 60). The procedure and details concerning the distribution of the Notice of Class Action and Proposed Settlement are described in the Declaration of James Prutsman. *See* **Exhibit A**. Completed claim forms were required to be submitted online or postmarked by September 28, 2016. (ECF 55 at ¶ 8; ECF 60). However, Class Members may receive benefits from the Settlement even if they did not submit a Claim form. (ECF 60).

### ii.     Publication Notice.

In addition to individual notice, the Settlement Administrator provided publication notice of the proposed settlement in the September 2016 issue of *Runner's World* magazine, on sale August 2, 2016, which appeared in both the print and online copy. *See* Prutsman Decl. at ¶ 8.

### iii.    Toll Free Telephone Information.

In addition to receiving information supplied by the class notice and publication notice, Class Members were able to contact the Settlement Administrator by mail or by calling in to a toll-free Call Center to inquire about the class notice, the settlement, and the procedure for filing claims, objections, or opting out. *See* Prutsman Decl. at ¶ 16. Over the course of the Claims period, over 150 calls were made to the Call Center. *Id.*

### iv.     Settlement Website.

Finally, the individual notice, publication notice, and Garmin.com support page directed Class Members to the official Settlement website, www.forerunnersettlement.com, which provided detailed information to Class Members regarding the lawsuit (including copies of all relevant pleadings filed with the Court), the proposed Settlement, Class Notice, the procedures for filing claims, objecting, or opting out, and furthermore provided an online portal for Class Members to easily submit Claim forms. *See* Prutsman Decl. at ¶¶ 18-20. Over the course of the Claims period, there were nearly 34,000 unique visits to the Settlement Website. *See* Prutsman Decl. at ¶ 22.

### 2.     Settlement Costs.

Under the Settlement Agreement, Defendant is responsible for all expenses associated with class notice, including the costs associated with (1) e-mailing and mailing the notice to the approximately 30,000 Class Members for which Defendant had either e-mail addresses or physical addresses, (2) publishing notice of the settlement in the September 2016 edition of

*Runner's World*, (3) setting up and running a telephone call center, (4) setting up, maintaining, and operating the settlement website, which provided Class Members access to settlement information and allowed them to electronically submit claim forms, and (5) the Settlement Administrator's review and evaluation of claims. *See* Settlement Agreement at § 2.23. Because notice to Class Members is generally the obligation of Plaintiffs, and not of Defendant, the fact that Defendant is bearing those expenses is an additional and substantial class-wide benefit. *See Hill v. Kaiser-Francis Oil Co.*, Case No. civ-0-07, 2011 WL 13113454, at *1 (W.D. Okla. Dec. 12, 2011) (Generally, a representative plaintiff is "expected to bear the cost of notice to the class as part of the 'burden of financing [their] own suit'") (*citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) (The usual rule is that a "plaintiff must pay for the cost of notice [to the class] as part of the ordinary burden of financing his own suit"). The administrative cost of implementing the Settlement and the claims procedures should thus not be overlooked.

3.     **Attorneys' Fees.**

Should the Court approve the Settlement, the attorneys' fees for Plaintiffs' counsel and litigation expenses will be paid by Defendant and will not come out of any funds to be distributed to Class Members. Settlement at § 2.28; *see also* Plaintiffs' Motion for Approval of Parties Separately Negotiated Payment of Attorneys' Fees and Expenses. (ECF. 63). If the case were litigated, the Class Members would have to pay their own attorneys' fees and litigation expenses, or alternatively engage counsel willing to bear the costs of the litigation. It is thus an additional benefit to the Class Members that attorneys' fees, litigation expenses, and expenses for notice and settlement administration are to be borne by Defendant. *Cf. Rosenbaum v. MacAllister*, 64 F.3d 1439, 1444 (10th Cir. 1995) (when a class action yields a fund for class members, fees may be paid from the recovery rather than obtained from the defendant).

4.    **Monetary and Non-Monetary Relief for Class Members.**

<u>All</u> Class Members, regardless of whether they submitted a Claim Form, will receive an extension of the One-Year Consumer Limited Warranty, to run for 12 months following the date of final approval of the Settlement, provided that the extension will only cover any damage to, or loss of, the Watch as a result of the alleged defective Watchband. In addition, the Settlement provides the relief below for Class Members who timely submitted a valid claim form:

a)    Defendant will repair or replace the Forerunner 610 Watchband at no cost, including but not limited to all postage, shipping and handling ("No Cost"). No proof of purchase will be required for repair of the Watchband. If a repair or replacement of the Watchband is not feasible, as determined by Defendant in its sole and absolute discretion, Defendant will replace the Watch with a comparable model, the Garmin Forerunner 620, which has a Manufacturer's recommended retail price of $349.99. If Defendant replaces the Watch with a comparable model, the comparable model shall come with the One-Year Consumer Limited Warranty applicable to the replacement watch, as if the replacement watch were purchased independent of the Action or this Agreement, from the date of the receipt or delivery of the replacement watch to the Class Member.

b)    If any Class Member suffered damage to the Watch as a result of the Watchband detaching from the Watch, Defendant will repair the Watch at no cost. No proof of purchase will be required for repair of the Watch. If a repair of the Watch is not feasible, as determined by Defendant in its sole and absolute discretion, Defendant will replace the Watch with a comparable model, the Garmin Forerunner 620, which has a manufacturer's recommended retail price of $349.99. If Defendant replaces the Watch with a comparable model, the comparable model shall come with the One-Year Consumer Limited Warranty, from the date of the receipt or delivery of the replacement watch to the Class Member. If the Watch was lost,

in order to obtain the comparable model, the Class Member will be required to provide a receipt or Objective Evidence of Proof of purchase of the Watch, as described in the Settlement Agreement.

c)  Subclass 1 consists of Class Members who purchased a replacement Watchband to address the alleged design defect regardless of where they purchased the replacement Watchband. Defendant will reimburse the actual cost of the replacement Watchband to Class Members who have a receipt or Objective Evidence of Proof of purchase from Defendant or one of Defendant's authorized retailers. If the Class Member purchased a replacement Watchband from a third party and it was a non-Garmin Watchband, Defendant will reimburse the Class Member the actual cost up to $50.00 if the Class Member has a receipt or Objective Evidence of Proof of purchase.

d)  Subclass 2 consists of Class Members who paid to repair the Watchband or Watch regardless of where they had the Watchband or Watch repaired, due to the Watchband or Watch being damaged because of the alleged design defect. Claimants who provide a receipt or Objective Evidence of Proof of repair of same and written certification in a form agreed upon by the parties shall be reimbursed for their actual cost, if the repair was done by Defendant. For those customers who used a third party to repair the Watchband or Watch, Defendant will agree to reimbursement for the actual cost up to $75.00, if the Class Member has a receipt or Objective Evidence of Proof of purchase.

e)  The Settlement Agreement also permits Class Members to recover more than one benefit in the same or multiple categories provided they meet the requirements to participate separately in each category. *See* Settlement at § 3.01(d).

### 5.      The Release is Narrowly Defined.

The Release that Class Members are providing to the Defendant is narrowly defined.  It is limited to the Garmin Forerunner 610 Watchband issue as alleged in the Complaint.  Unlike the confusing and often all-encompassing releases that are sometimes included in other consumer class action settlements, the release in this Settlement merely provides:

> Upon Final Approval, and in consideration of the promises and covenants set forth in this Settlement Agreement, the Releasing Persons will be deemed to have completely released and forever discharged the Released Defendants from any and all past, present and future claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, including without limitation (i) those known or unknown or capable of being known, and (ii) those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time, including facts in the possession of and concealed by any Released Defendants, and (iii) those accrued, unaccrued, matured or not matured, all from the beginning of the world until today (collectively, the "Released Rights"), that arise out of in any way relate or pertain to (a) Released Rights that were asserted, or attempted to be asserted, or could have been asserted in the Action relating to the Garmin Forerunner 610 watchband issue as alleged in the Action, (b) the claims asserted or that could have been asserted in the Action relating to the Garmin Forerunner 610 watchband defect as alleged in the Action; and/or (c) any violation and/or alleged violation of state and federal law, whether common law or statutory, arising from or relating to the conduct and/or omissions described in Paragraph 4.01(a)-(b) above relating to the Garmin Forerunner 610 watchband issue as alleged in the Action.

Settlement at § 4.01.

### IV.      Standards for Approval of Class Action Settlements.

Before granting final approval to a class settlement, the Court must find that it is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). The decision whether to approve the settlement of a class action is left to the Court's sound discretion. *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *overruled in part on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). In exercising that discretion, the Tenth Circuit has established four factors in determining whether a

10

proposed settlement is fair, reasonable, and adequate: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweights the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (internal citation omitted).

In determining whether a settlement is fair, the Court should not decide the merits of the case or resolve unsettled legal questions, but rather should evaluate these factors in light of the strong judicial policy favoring settlement. *Wilerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997) ("the essence of settlement is compromise, and settlements are generally favored"); *see also Lane v. Page*, 862 F. Supp. 2d 1182, 1248 (D.N.M. 2012) ("There is an overriding public interest in settling class action litigation . . . especially where substantial judicial resources can be conserved by avoiding formal litigation") (internal citations and quotations omitted). For the reasons set forth below, the Court should grant final approval of the Settlement.

### 1.    The Proposed Settlement was Fairly and Honestly Negotiated.

When examining whether a settlement was "fairly and honestly negotiated," the Court must first be concerned with protection of the class members, and in its analysis may consider the "experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Belote v. Rivet Software, Inc.*, Case No. 12-cv-2792, 2014 WL 3906205, at *3 (D. Colo. August 11, 2014) (internal citation omitted); *see also Lane*, 862 F. Supp. 2d at 1246 (district courts within the Tenth Circuit "often examine whether the parties have vigorously advocated their respective positions throughout the pendency of the case").

Plaintiffs and Defendant robustly advocated their respective positions in this Action. Plaintiffs have aggressively and with determination pursued their claims, both in this District and in the Northern District of Illinois. Defendant from the beginning maintained that Plaintiffs' claims lack merit. Defendant filed a motion to dismiss in the Northern District of Illinois, filed a motion for change of venue in this Action, and finally filed a partial motion to dismiss, which this Court granted and denied in part. In answering the non-dismissed claims, Defendant continued to vigorously deny any liability to Plaintiffs and raised a host of affirmative defenses. (ECF 41). Plaintiffs, for their part, filed two actions in the Northern District of Illinois, and subsequently filed a third in the District of Utah. In each action, they asserted their claims for and sought relief for the alleged defect in the design of the Watchband.

There is no fixed standard for how much litigation must be conducted before the Parties can entertain settlement discussions. *In re Rio Hair Naturalizer Products Liability Litig.,* No. MDL 1055, 1996 WL 780512, at *13 (E.D. Mich. Dec. 20, 1996) ("There is no precise yardstick to the measure [of] the amount of litigation that the parties should conduct before settling"). Even settlements reached at a very early stage and prior to formal discovery may be approved where the settlements represent substantial concessions, and no evidence of collusion exists. *See, e.g., Weiss v. Mercedes- Benz of N. Am., Inc.,* 899 F.Supp. 1297, 1301 (D. N.J. 1995).

Finally, when the "settlement resulted from arm's length negotiations between experienced counsel after significant discovery [has] occurred," as is the case here, the Court should presume that the Settlement was fairly and honestly negotiated. *Lucas*, 234 F.R.D. at 693. There is no doubt that the parties have vigorously advocated their respective positions over the course of the litigation, and that the terms of the proposed settlement were fairly and honestly negotiated.

2.      **Serious Questions of Law and Fact Exist.**

In "determining whether questions of law and fact exist, the Court is not to evaluate the merits of the claims." *Ashley v. Regional Trans. Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Trust*, Case No. 05-cv-1567, 2008 WL 384579, at *6 (D. Colo. Feb. 11, 2008). Rather, the Court is to examine whether the ultimate outcome of the litigation is in doubt, as the existence of such doubt "augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *Id.* (internal quotation omitted). The Court must balance the risks of establishing liability and damages against the benefits afforded to the Class Members, and the immediacy and certainty of a substantial recovery against the risks of continuing litigation. *See Weiss*, 899 F.Supp at 1301; *see also West Virginia v. Chas. Pfizer & Co., Inc.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) *aff'd* 440 F.2d 1079 (2d Cir. 1971) (The outcome of litigation is always uncertain "no matter how confident one may be"). As noted, Defendant has vigorously denied any liability since the inception of the lawsuit in December 2013, and was successful in dismissing Plaintiff's Lanham Act claim, negligence and negligent misrepresentation claims, and breach of warranty claim as to Joel Katz from the Action. (Doc 40.) However, several claims still remain pending.

As Defendant noted in its affirmative defenses, there are serious questions as to whether claims are barred as to certain plaintiffs because they are not the proper party in interest, because they may lack privity with Defendant, and because of Defendant's disclaimer of certain warranties. (ECF 41.) In addition, there are serious questions as to causation, as Plaintiffs would have to engage in the fact-intensive quest of proving that it was a defect of the Watchband that caused the alleged damages, rather than misuse or alteration by Plaintiffs or third parties. Given the fact that these remaining claims have survived a motion to dismiss, but have not yet even

13

been tested in a motion for summary judgment, the ultimate outcome of the litigation is certainly in doubt, and the second factor is satisfied.

### 3. The Value of Immediate Recovery Outweighs the Mere Possibility of Relief after Protracted and Expensive Litigation.

In the Tenth Circuit, the value of the proposed settlement is weighed "not against the net worth of the defendant, but against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb*, 11 F.3d at 1015. While the Parties have vigorously advocated their respective positions in this Action, the litigation is also in its relatively early stages. Plaintiff Andrea Katz's initial lawsuit was filed in late 2013. While Defendant answered the Complaint in this Action over 18 months ago, the litigation was effectively stayed prior to the discovery and dispositive motion deadlines, as the parties expended significant time and effort in negotiating the proposed Settlement and moving toward final approval. Additionally, Plaintiffs have not yet gone through the process of moving for Class Certification, which itself would take both significant time and expend significant resources of the Parties.

Pursuing the litigation further would thus require reopening of discovery efforts and would furthermore "require significant judicial and party resources to complete motions for summary judgment . . . and motions in limine," with any subsequent appeal to the Tenth Circuit on any number of issues – including class certification – likely to delay final resolution of the Action. *See Lane*, 862 F. Supp. 2d at 1248-49; *see also Belote*, 2014 WL at *4 (finding that by reaching settlement prior to filing dispositive motions or completing discovery, the parties "seek[] to avoid significant expenses and delay and ensure recovery for the Class in a prompt and efficient manner").

The Settlement, in contrast, provides benefits to the Class with guaranteed relief in the here and now, provides guaranteed monetary relief for the proposed Subclasses, benefits to the Class by providing an extended warranty to all Class members, and benefits both Plaintiffs and the Defendant by the guaranteed finality to the proceedings. *See Lucas*, 234 F.R.D. at 694 (court found value of immediate recovery outweighed possibility of relief after continued litigation when litigation was likely to last several years).

### 4.  The Parties Believe the Settlement to be Fair and Reasonable.

Courts in the Tenth Circuit have found that "counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695. Counsel for Plaintiffs and the Defendant are highly experienced in complex class action litigation.  When a "settlement is reached by experienced counsel after negotiations in an adversarial setting," such as the case here, "there is an initial presumption that the settlement is fair and reasonable." *Marcus v. State of Kansas, Dept. of Revenue*, 209 F. Supp. 2d 1179, 1182-83 (D. Kan. 2002). Additionally, the arms' length negotiated settlement here provides clear benefits to Plaintiffs and Defendant alike, and in fact goes so far as to provide benefits to all Class Members, regardless of whether they submitted a Claim Form as part of the settlement. *Ashley*, 2008 WL at *7. The Parties and their counsel believe the Settlement is fair, reasonable, and adequate in light of the facts and circumstances of this case, and jointly move this Court for final approval of the settlement.

## V.  The Single Objection to Date Provides No Grounds to Reject the Settlement.

In determining whether a proposed class action settlement is fair, adequate, and reasonable, the Court should also examine and consider the substance of any objections to the settlement. Fed. R. Civ. P. 23(e)(5). In this case, out of the estimated 130,000 Class Members, and approximately 27,000 Class Members to whom notice was delivered by mail or e-mail, only one objection has been made to date. (ECF 62.) As other courts have recognized, "[t]he existence

15

of a relatively few objections certainly counsels in favor of approval." *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 378 (D.D.C. 2002) (internal citation omitted). The substance of the objection is grounded on facts specific to the objector and provides no grounds to block settlement of this class action.

       **1.**       **The McFadzen Objection.**

The McFadzen Objection is grounded in the frustrations the objector allegedly faced when attempting to work with Garmin to repair the Watchband on his own individual Watches or replace the Watch with a different model. (ECF 62.) McFadzen argues that Garmin was "intentionally 'covering up' and/or misleading their customers to prevent legal action," and that it was a very "frustrating experience" for him. *Id.* He objects to the settlement due to the "(1) persistent misleading information Garmin gave their customers on the Forerunner 610 watch, (2) costs associated with lost [Forerunner] 610s, and (3) resultant athletic performance issues." *Id.* McFadzen offers no reason as to why the Settlement is unfair to the Class as a whole, and in fact appears grateful that the instant Class Action was filed. *Id.* Rather, his objections are based on facts specific to him, and he provides no reason why he cannot simply opt out of the Settlement in order to protect his interests. Accordingly, the McFadzen Objection provides no ground for denying the Settlement Benefits to the entire Class, and the objection should be overruled.

**VI.**      **Defendant has Complied with the Requirements of CAFA, 28 USC ¶ 1715.**

Defendant hereby notifies the Court, pursuant to its Order of May 31, 2016, of its compliance with the requirements of the Class Action Fairness Act of 2005, 28 USC § 1715 ("CAFA"). CAFA requires each defendant that is participating in the proposed settlement of a class action to serve upon the appropriate State and Federal officials notice of the proposed settlement ("CAFA Notice"). 28 USC § 1715 (b). CAFA Notice must be provided no later than 10 days after filing of the proposed class action settlement, and must include copies of any and

all documents enumerated under 28 USC § 1715(b)(1-8). *Id.* A court may not grant final approval of a proposed settlement earlier than 90 days after CAFA Notice is served. *Id.* at § 1715(d).

As noted above, the Parties filed their motion for preliminary approval of class action settlement on May 13, 2016. (ECF 54.) On May 17, 2016, Defendant – through the settlement administrator, Heffler Claims Group ("Heffler") – served CAFA Notices via certified mail on the Attorneys General of all 50 States and the District of Columbia, the United States Attorney General, and the Attorneys General of all U.S. territories (collectively, the "Attorneys General"). *See* Prutsman Decl. at ¶ 5. Pursuant to 28 USC § 1715(b)(1-8), the CAFA Notice included: (1) a copy of the complaint; (2) notification that no judicial hearings were currently scheduled; (3) a copy of the proposed notice of settlement that describes the class members' right to exclude themselves from the class, as well as a copy of the proposed summary publication notice; (4) a copy of the proposed settlement agreement; (5) notification that no other settlements or other agreements exist between class counsel and counsel for Defendant; (6) notification that no final judgment or notice of dismissal had been entered; (7) Defendant's reasonable estimate of the proportion of overall class members residing in each state; and (8) notification that no other relevant judicial opinions had been entered. *Id.*

On July 26, 2016, Defendant – also through Heffler – served a voluntary supplemental CAFA Notice via certified mail to the Attorneys General to inform them of court filings that had occurred subsequent to the filing of the Parties' motion for preliminary approval and the initial CAFA Notice. *Id.* at ¶ 6. Specifically, Defendant provided the Attorneys General with copies of: (1) the Order of May 31, 2016, granting the Parties' motion for preliminary approval and scheduling a final fairness hearing for November 3, 2016; (2) the Order of June 27, 2016,

approving the form of the Parties' amended publication notice, which was to be disseminated by publication on or before August 29, 2016; (3) the form of the approved amended publication notice; (4) the Order of July 7, 2016, approving the form of the Parties' amended class notice, which was to be disseminated on or before July 15, 2016; and (5) the form of the approved amended class notice. *Id.* This supplemental CAFA Notice was served 101 days prior to the scheduled final fairness hearing.*Id.* at § 1715(d). To date, no Attorneys General have objected to the Settlement. *See* Prutsman Decl. at ¶ 7.

## Conclusion

The proposed Settlement is fair, reasonable, and adequate, and satisfies the standards for approval of class actions. Accordingly, for the reasons set forth above, Plaintiffs, Class Counsel, and Defendant request that the Court grant final approval of the Settlement, and enter the Final Order and Judgment dismissing the action with prejudice.

Dated: October 14, 2016

*/s/ Jena M. Valdetero*

PARSONS BEHLE & LATIMER
201 S. Main Street, Suite 1800
Salt Lake City, UT 84111
Phone: 801-532-1234
zwinzeler@personsbehle.com

Kenneth J. Mallin
BRYAN CAVE LLP
211 N Broadway, Ste 3600
St. Louis, MO 63102
Phone: 314-259-2000
Fax: 314-259-2020
kjmallin@bryancave.com

Jena M. Valdetero
BRYAN CAVE LLP

Respectfully submitted,

*/s/ Noel J. Nudelman*

HEIDEMAN NUDELMAN KALIK, PC
1146 19th Street, NW, 5th Floor
Washington, D.C. 20036
Phone: 202-463-1818
Fax: 202-463-2999
njnudelman@hnklaw.com

Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Phone: 801-363-6363
Fax: 801-363-6666
mjames@hjdlaw.com
*Attorneys for Named Plaintiffs*

18

161 N Clark Street, Ste 4300
Chicago, IL 60601

Phone: 312-602-5000
Fax: 312-602-5050
jena.valdetero@bryancave.com

*Attorneys for Defendant Garmin*
*International, Inc.*

### CERTIFICATE OF SERVICE

The undersigned certifies that he served a copy of the foregoing document upon all

counsel of record identified on the Court's electronic filing system on October 14, 2016.

*/s/ Jena M. Valdetero*

**APPENDIX OF SUCCESSFUL OPT-OUTS**

1.      Jose Mijares. *See* ECF 61.